IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                         No. CR 06-1339 JB

MARK ANDREW CUMMINS,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum in Accordance with the Plea Agreement, filed May 13, 2008 (Doc. 49). The Court held a hearing on May 19, 2008. The primary issues are: (I) whether the Court can impose a sentence below the statutory minimum sentence under United States v. Booker, 543 U.S. 220 (2005); and (ii) whether the Court should grant Cummins' request for a variance. Because the Court does not believe it has the discretion to sentence Cummins below a statutory mandatory minimum sentence, but because it believes Cummins is entitled to a 1 month variance down to the mandatory statutory minimum sentence, the Court will deny Cummins' request to impose a sentence of 87-months incarceration, but will grant Cummins' request for a variance and sentence him to 120-months incarceration.

**FACTUAL BACKGROUND**

      Cummins did not graduate from high school, but has a specialized skill in welding. See Presentence Investigation Report ¶ 44, at 14, disclosed September 4, 2007 ("PSR"). Cummins states in his Sentencing Memorandum that he has been steadily employed with different oil-well companies and as a laborer. See Defendant's Sentencing Memorandum in Accordance with the Plea

Agreement at 5, filed May 13, 2008 (Doc. 49)("Sentencing Memo."). He contends that he found work as often as he could. See id. Between 2004 and July of 2006, Cummins reported doing various side jobs as a laborer in the Bloomfield, New Mexico area. See PSR ¶ 45, at 14. When Cummins could find work, he earned approximately $450.00 every two weeks. See id.

Cummins resided in the Farmington/Bloomfield, New Mexico area from his birth until the age of thirty. See id. ¶ 38, at 13. Cummins recalls that, from the age of thirty until the age of thirty-nine, he lived in Colville, Washington. See id. Since the age of thirty-nine, and just before his arrest on January 5, 2006, Cummins reported residing with a friend in Bloomfield, New Mexico. See id.

Cummins has six state adult convictions in addition to this federal offense. See id. ¶¶ 28-33, at 8-12. In 1996, at age thirty-six, he pled guilty to Third Degree Driving While License Suspended, a Misdemeanor. See id. ¶ 28, at 8. In 1997, at age thirty-seven, he was convicted of Driving While License Suspended or Revoked, Display Registration Plates, No Insurance, and Open Container of Alcoholic Beverage. See id. ¶ 29, at 8. In November 1997, Cummins pled guilty to No Driver's License. See id. ¶ 30, at 10. In December 1997, Cummins pled guilty to Fourth Degree Assault (Misdemeanor) and Resisting Arrest (Misdemeanor). See id. ¶ 31, at 10.

From 1979 through 1989, Cummins maintained a relationship with Evelyn Cordova. See id. ¶ 40, at 13. This union produced two children: (I) Silva Jaramillo, age 25; and (ii) Lucas Jaramillo, deceased. See id. "On December 25, 2000, Silva Jaramillo was operating a vehicle with her brother as the passenger. Near Cortez, Colorado, Silva Jaramillo and Lucas Jaramillo were involved in an automobile accident. Lucas Jaramillo died at the age of 11 as a result of his injuries." Id.

The loss of his son traumatized Cummins. See Sentencing Memo. at 6. The loss of a child weighs heavily on a parent's heart, and following Lucas' death, Cummins made some bad decisions,

which he probably would not have made had he not lost his son. See id. Cummins contends that he engaged in a relationship with a woman that was not positive, which lead to him seeking alcohol in solitude. See id. After this relationship dissolved, Cummins made another bad decision in April, 2000, when he chose to drive while intoxicated in Aztec, New Mexico. See id. On April 18, 2000, he was convicted of Driving Under the Influence of Liquor or Drugs (Misdemeanor). See id. ¶ 32, at 11. Cummins contends that, after pleading guilty, he was ready to move on with his life. See Sentencing Memo. at 6. Cummins had no other violations until this case. See id.

Evelyn Cordova, Cummins' ex-girlfriend, currently resides in Bloomfield, New Mexico. See PSR ¶ 40, at 13. Cummins maintains a good relationship with his daughter, and a civil relationship with his ex-girlfriend. See id. "When not in custody, Mr. Cummins sees his daughter frequently." Id. Cummins argues that, given his circumstances, he has been a relatively good father to his children. See Sentencing Memo. at 5.

According to Cummins, he has been incarcerated since January 5, 2006. See Sentencing Memo. at 6. On January 5, 2006, after Cummins was arrested for driving while intoxicated, police officers located 59.9 net weight grams of methamphetamine (actual) and two firearms in his vehicle. See PSR ¶¶ 9-10, at 4-5. Specifically, while searching Cummins' vehicle, Farmington Police Officers found a chrome plated Smith and Wesson .22 caliber revolver, serial number 8C805, and a Navy Arms .45 caliber pistol, serial number J04942, under the driver's seat. See id. ¶ 8, at 4. A police officer also discovered several glass pipes, 58.5 net weight grams of methamphetamine (actual) in the trunk of the vehicle, and 1.4 net weight grams of methamphetamine (actual) between the visor and roof of the vehicle on the driver's side. See id. ¶ 9, at 4.

Accordingly, Cummins was arrested and booked into the San Juan County Detention Center in Farmington, New Mexico, by a Farmington, New Mexico Police Officer on charges of Possession

With Intent to Distribute Methamphetamine, which is related to the federal offense; Aggravated Driving While Intoxicated, Driving on a Suspended Driver's License, License Plate Light, Possession of Drug Paraphernalia, and Possession of a Stolen Firearm. See id. at 1. On January 9, 2006, Cummins posted a $40,700.00 surety bond, and he was released from the San Juan County Detention Center. See id. On January 5, 2006 Cummins pled guilty to driving under the influences of liquor or drugs. See PSR ¶ 33, at 12. The five days spent in state custody were credited against Cummins' sentence in case number D-1116-CR-200600087. See id. at 1.

In a post-arrest interview with a narcotics task force agent, Cummins acknowledged traveling to Phoenix, Arizona, for the purpose of picking up loads of methamphetamine from a man named "Whore Dog" and delivering the methamphetamine as directed upon his return to the Farmington area. PSR ¶¶ 11-12, at 5. Cummins admitted to taking approximately ten of these trips between September of 2005 and January 2006. On each occasion, a man named Tony LNU, who resides in Farmington, paid Cummins $800.00. See id. ¶ 21, at 5.

## PROCEDURAL BACKGROUND

On June 13, 2006, by Indictment, the Grand Jury charged Cummins with Possession With Intent to Distribute 50 Grams and More of Methamphetamine, 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 841(b)(1)(A). See Indictment at 1, filed June 13, 2006 (Doc. 1). Congress provides a punishment of ten years to life imprisonment for a violation of these statutes. See 21 U.S.C. § 841(b)(1)(A). Accordingly, the violation of these statutes carry a mandatory minimum of ten years to life imprisonment. See id.

On June 14, 2006, a federal warrant was issued for Cummins' arrest. See PSR at 1. On June 14, 2006, Cummins entered a plea of not guilty to the Indictment. See id. ¶ 1, at 3. On July 13, 2006, the federal arrest was executed as to Cummins. See id. at 1. Cummins has remained in

custody since his arrest on the federal warrant on July 13, 2006.  See id.

The United States and Cummins discussed Cummins' criminal history.  See Sentencing Memorandum at 1.  All parties assumed that Cummins was a Category I for sentencing purposes. See Plea Agreement ¶ 5, at 3-4, filed July 6, 2007 (Doc. 40)("Plea Agreement")("Additionally, this reduction depends on the Defendant having not more than one criminal history point as determined under the sentencing guidelines.").  The United States proposed a Plea Agreement that offered Cummins a sentence of 87-months incarceration.  See id. ¶ 10(b), at 5.

Cummins agreed to take the United States' plea offer, and on July 6, 2007, he entered into the Plea Agreement.  See id. ¶¶ 3, 19 at 2, 8.  Cummins acknowledged his wrongdoings.  See id. ¶ 10(a), at 4-5.  Both the United States and Cummins' counsel had access to information about Cummins' criminal history when the agreement was made.  The parties' assumption that Cummins was a Category I for sentencing purposes is reflected by the signatures that appear on the Plea Agreement, filed with the Court on July 6, 2007.  See id. ¶ 19, at 8.

The plea agreement stipulated that Cummins may be eligible for the safety-valve provisions set forth at 18 U.S.C. § 3553(f)(1)-(5) and U.S.S.G. § 5C1.2.  See Plea Agreement ¶ 5, at 2-3.  The parties agreed that, if Cummins establishes eligibility for each of the elements in 18 U.S.C. § 3553(f)(1)-(5), Cummins would be entitled to a reduction of 2 levels from the base-offense level as calculated under the sentencing Guidelines, and the sentence imposed could be less than the statutory minimum sentence.  See Plea Agreement ¶ 5, at 2-3. The plea agreement states in paragraph 5 that Cummins "may be eligible for the 'safety valve' provisions set forth at 18 U.S.C. § 3553(f)(1)-(5) and U.S.S.G. § 5C1.2." Plea Agreement ¶ 5, at 2.  The language in that paragraph continues to outline the effect if Cummins is eligible for the safety valve, and it states that the reduction depends on Cummins not having more than 1 criminal history point.  See id. ¶ 5, at 2-3.

The United States represents that, if it had been clear to both parties that the safety valve would not apply based on the available information, there would have been no point in including the language in paragraph 5 of the Plea Agreement. See United States' Response to Defense's Sentencing Memorandum, Filed May 13, (Doc. 49) ¶ 3, at 2, filed May 15, 2008 (Doc. 50)("Response").

There was, however, no stipulation that Cummins was eligible for the safety valve. See Plea Agreement ¶ 5, at 2-3. Nevertheless, the parties stipulated in Paragraph 10(b) of the Plea Agreement that the United States agreed that a sentence at the lower end of the applicable Guideline range, of 87 months, was appropriate. See id. ¶ 10(b), at 5. Accordingly, the estimate of 87 months appears to have been based on anticipation that the safety valve might apply. If the safety valve applied, the total adjusted offense level would have been 29. See Response ¶ 3, at 5. With a Criminal History Category of I and an offense level of 29, the low end of the Guideline sentence range would be 87 months. See id.

The plea agreement's language, as it relates to the safety valve, is contingent upon a determination whether Cummins is eligible for the safety valve, which is contingent upon the calculation of his criminal history points. See Plea Agreement ¶ 5, at 2-3. The plea agreement also stipulates that, pursuant to U.S.S.G. § 3E1.1, Cummins has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct, and that, as a result, Cummins is entitled to a reduction of 3 levels from the base offense level as calculated under the sentencing Guidelines. See id. ¶ 10(a), at 4-5.

In the Plea Agreement, Cummins recognizes that the Plea Agreement has already conferred a benefit on him. See id. ¶ 10©, at 5. Consequently, in return for the benefit conferred on him by entering into this agreement, Cummins agrees not to seek a downward departure, variance, or deviation from the applicable sentencing Guideline range as determined by the Court after resolution

of any objections by either party to the PSR. See id. Through the Plea Agreement, Cummins also knowingly waives his right to appeal any sentence imposed within the Guideline range applicable to the statute of conviction and as determined by the Court. See id. ¶ 13, at 6.

According to Cummins, both sides were fully aware of his criminal history at the time of the plea on July 6, 2007. See Sentencing Memo. at 8. At his initial plea, Cummins was prepared to plea, and pled, guilty to the Indictment, with the understanding that the Court would sentence him to 87 months of incarceration. See id. at 1. Cummins contends that he understood that his plea was for 87 months, which he believed would satisfy the requirements of 18 U.S.C. § 3553(a). See Sentencing Memo. at 1.

Cummins states that there were no surprises in the PSR. See id. at 8. The PSR calculated a base offense level of 32. See PSR ¶ 18, at 6. The PSR notes that the Guideline sentencing range for a 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A) offense, a Class A Felony, is found in U.S.S.G. § 2D1.1(a)(3) of the Sentencing Guidelines. See PSR ¶ 18, at 6. The PSR notes that Cummins' relevant conduct involved 228.8 net weight grams of methamphetamine or 59.9 net weight grams of actual methamphetamine. See id. Pursuant to U.S.S.G. § 2D1.1, Notes to Drug Quantity Table: (B), in the case of a mixture or substance containing methamphetamine, the court should use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the methamphetamine (actual), whichever is greater. See U.S.S.G. § 2D1.1, Notes to Drug Quantity Table (B). In this case, 59.9 net weight grams of methamphetamine (actual) has a greater offense level. See PSR ¶ 18, at 6. According to the drug quantity table, at least 50 grams but less than 150 grams of methamphetamine (actual) establishes a base offense level of 32. See id.

Paragraph 19 of the PSR discusses the Specific Offense Characteristic. See id. ¶ 19, at 6.

Pursuant to U.S.S.G. § 2D1.1(b)(1), if a dangerous weapon, including a firearm, was possessed, a 2-level increase is applicable. See U.S.S.G. § 2D1.1(b)(1). The PSR increased the Offense Level by 2 levels, to a level of 34. See PSR ¶ 19, at 6.

Paragraph 20 of the PSR discusses another Specific Offense Characteristic: the possibility of safety-valve relief. See id. ¶ 20, at 7. Pursuant to U.S.S.G. § 2D1.1(b)(11), if the defendant meets the criteria set forth in U.S.S.G. § 5C1.2(1)-(5), limitation on applicability of statutory minimum sentences in certain cases, the court should decrease the offense level by 2 levels. See U.S.S.G. § 2D1.1(b)(11). The PSR determined that Cummins does not meet the criteria of U.S.S.G. § 5C1.2(1) and (2), because he has more than 1 criminal history point and because he possessed two firearms in connection with his federal offense. See PSR ¶ 20, at 7. The PSR therefore decided a 2-level reduction is not applicable. See id.

The PSR concluded: "There was not sufficient evidence to conclude the defendant was a leader or organizer in the instant offense." Id. ¶ 22, at 7. The PSR stated that investigative materials reveal Cummins was acting as a courier; however, as Cummins admitted, he acted as a courier approximately ten times. See id. The DEA agent believes Cummins' admitted, repeated trips to Phoenix to pick up large loads of methamphetamine, and the ongoing nature of Cummins' conduct, show Cummins to be more than a minor participant in the drug-trafficking conspiracy. See id. Given the information available to the United States Probation Office at the time it prepared the PSR, it was the Probation Officer's assessment that Cummins' repeated and ongoing acts as a courier do not support a characterization of him as a minor participant. See id.

Further, "[t]he defendant demonstrated an acceptance of responsibility for the offense of conviction." Id. ¶ 25, at 7. A 3-level reduction gives a Total Offense Level of 31. See id. ¶ 26 at 7.

The PSR assessed 1 criminal history point for the first 1997 conviction and another criminal history point for the third 1997 conviction. See id. ¶¶ 29, 31, at 8, 10. It also assessed 1 criminal history point for the 2000 DUI conviction. See id. ¶ 32, at 11. Under Chapter 5, Part A of the Guidelines, the total of the criminal history points is 3, which establishes a criminal history category of II. See id. ¶ 34, at 12.

Cummins represents that he has fully cooperated with the investigators in this case. See Sentencing Memo. at 6. Cummins states that he has given the names of all people involved of which he is aware to aid the "Drug Enforcement Division." Id.

On May 13, 2008, Cummins, through his counsel of record, filed a sentencing memorandum in support of a sentence of 87 months, requesting that the Court impose that sentence. See id. at 8. Cummins incorporates, by reference, his Plea Agreement in his sentencing memorandum. See id. at 1. Cummins further requests that the Court recommend to the Bureau of Prisons that he be sent to the facility at Bastrop, Texas, and that it be further ordered that he be placed in an appropriate drug rehabilitation program during his confinement. See id. at 8.

On May 15, 2008, the United States filed a Response to Defense's Sentencing Memorandum. See Doc. 50. In its Response, the United States requests a sentence at the low end of the applicable Guideline range. See id. ¶ 5, at 3. The United States concurs with the Probation Officer's calculations, which resulted in a final adjusted offense level of 31 and a Criminal History Category of II. See id. ¶ 4, at 2. As such, the Guideline range is 121-151 months. See id. The United States requests, in accordance with the plea agreement, a sentence at the low end of the applicable range, a sentence of 121 months. See id. ¶ 5, at 3. The United States argues that there is no mechanism by which Cummins can legally receive a sentence below the statutory minimum of 10 years, or 120 months. See id. ¶ 4, at 2.

At the May 19, 2008 hearing, the attorney for Cummins requested that, if the Court determines it is unable to sentence Cummins below the statutory minimum, the Court use its discretion to vary downward from the Guideline sentence to the mandatory minimum sentence of 120 months.  See Transcript of Hearing at  4:18-25 (taken May 19, 2008)("Tr.")(Court & Chouinard).[1]  In response to Cummins' request, the United States stated that it did not object to the Court imposing a sentence of 120 months.  See Tr. at 5:15-16 (Armijo).

**LAW REGARDING SENTENCING AFTER UNITED STATES V. BOOKER**

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Federal Sentencing Act, thus making the Guidelines effectively advisory.  While excising two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> © to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case."). To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (I) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to be considered. See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotations omitted). A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d

1261, 1264 (10th Cir. 2006). This presumption, however, is an appellate presumption, not one that the trial court can or should apply. See Gall v. United States, 128 S.Ct. 586, 591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007); Rita v. United States, 127 S. Ct. at 2463. Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory Guideline sentence. See Gall v. United States, 128 S.Ct. at 591; Kimbrough v. United States, 128 S.Ct. at 564; Rita v. United States, 127 S. Ct. at 2463.

The sentencing court has discretion to impose a sentence below the Guideline range, and the Tenth Circuit has mandated that the district court must impose a sentence that is no greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a)(2). The Supreme Court of the United States clarified in Gall v. United States, that, because it had declared the Guidelines not mandatory but only advisory in Booker v. United States, the range of sentencing choices, dictated by the facts of the case, "is significantly broadened." Gall v. United States, 128 S.Ct. at 602. For example, a sentencing court is free to consider factors that are not ordinarily considered under the Guidelines. See Rita v. United States, 127 S.Ct. at 2473 (Stevens, J., concurring); United States v. Andrews, 447 F.3d 806, 811-812 & n.3 (10th Cir. 2006)("While the guidelines discourage consideration of certain factors for downward departures, Booker frees courts to consider those factors as part of their analysis under § 3553(a)."); United States v. Serrata, 425 F.3d 886, 918-919 (10th Cir. 2005).

While the court may vary below the advisory Guideline range, the court does not have such discretion to depart or vary below the statutory minimum sentence. In United States v. Mosley, 965 F.2d 906 (10th Cir. 1992), the defendant argued that the sentencing judge erred by concluding that he could not depart below the minimum sentence mandated for carrying a firearm during the commission of a drug crime. See id. at 916. The district judge viewed the minimum as unduly harsh in the defendant's case and saw himself as having no discretion to depart below it. See id.

-12-

On appeal, the defendant directed the Tenth Circuit to United States v. Jefferson, 925 F.2d 1242 (10th Cir. 1991), cert. denied, 502 U.S. 884 (1991), where the Tenth Circuit held that it was an abuse of discretion for a judge, who had discretion to depart below a Guidelines sentence and desired to do so, but did not depart because he or she believed that the court lacked such discretion. See 925 F.2d at 1259-60. The Tenth Circuit in United States v. Mosley distinguished United States v. Jefferson, stating that, in United States v. Mosley, "the minimum sentence in the case at bar is statutory rather than a product of the Guidelines . . . [W]e are aware of no authority for the proposition that a court can depart below a statutory minimum." 965 F.2d at 916. This idea was further explained in United States v. De Paz, 200 Fed.Appx. 791 (10th Cir. 2006), in which the Tenth Circuit stated: "However, when a defendant pleads guilty to a crime that carries a mandatory minimum sentence, the court has no discretion to do anything other than impose the sentence required by the statute." Id. at 791 (citing United States v. Cherry, 433 F.3d 698, 702 (10th Cir. 2005)(stating that the defendant's argument that United States v. Booker renders statutory mandatory minimum sentences unconstitutional, because such sentences preclude the application of the sentencing factors set forth in 18 U.S.C. § 3553(a), has been foreclosed by the Tenth Circuit, see United States v. Payton, 405 F.3d 1168, 1173 (10th Cir. 2005), as well as every other circuit to consider the issue).

## ANALYSIS

Cummins is asking the Court for a sentence that is appropriate, and similar to the one upon which the parties agreed and to which he pled in open court. The bases for his request are primarily consideration of the 18 U.S.C. § 3553(a) factors and his assertion that the parties agreed to a sentence of 87 months in the plea agreement. The mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A), however, is ten years, or 120 months. Because Cummins is not safety-valve

eligible, as the parties thought he might be at the time of the Plea Agreement, and his debrief did not rise to the level of substantial assistance under the provisions of U.S.S.G. § 5K1.1, there is no mechanism by which Cummins can legally receive a sentence below the statutory minimum of ten years or 120 months. Thus, if the Court wishes to impose a sentence below the advisory sentencing Guideline range based on its application of the 18 U.S.C. § 3553(a) factors, it may do so only to the statutory minimum of 120 months.

**I.   EVEN THOUGH THERE ARE MITIGATING CIRCUMSTANCES, THE COURT WILL NOT IMPOSE A SENTENCE OF 87 MONTHS.**

Cummins argues that, taking into consideration the facts of this case, his willingness to fully cooperate with all investigators, his being honest and up-front with the Probation Officer, and that all parties had agreed at the time of the plea that the imposition of 87 months was appropriate, the Court should sentence him to 87 months of incarceration. See Sentencing Memo. at 7-8. Cummins contends that an 87-month sentence in his case would be sufficient to meet the purposes in 18 U.S.C. § 3553(a) and that any higher sentence would be greater than necessary to accomplish § 3553(a)(2)'s goals. See Sentencing Memo. at 4. Cummins urges the Court to exercise its broad post-Booker, post-Gall, and post-Kimbrough discretion and comply with its obligation under the parsimony clause by imposing a sentence of imprisonment of 87 months. See Sentencing Memo. at 4.

The Court believes that it is restrained by the statutory minimum sentence that Congress has imposed in this case as well as by the fact that the defendant was not eligible for the safety valve or substantial assistance under 5K1.1. Thus, even though Cummins has presented mitigating factors in this case, the Court will not grant his request to impose a sentence of 87 months because it must comply with the statutory-minimum sentence that Congress has imposed. The Court will, therefore, deny Cummins' request to impose a 87-month sentence.

## II. THE COURT WILL VARY FROM THE GUIDELINE SENTENCE, BUT NOT BELOW THE STATUTORY MINIMUM.

The Court has considered the Guideline sentencing range established for Cummins and does not believe that the punishment that is set forth in the Guidelines is appropriate for Cummins' offense. The Court does not have the discretion, however, to vary below the statutory minimum of 120 months. Thus, the Court will vary 1 month and sentence Cummins to the mandatory minimum of 120-months imprisonment.

The nature and circumstances of the offense, and the history and characteristics of Cummins, establish that a sentence of 120 months is appropriate. Cummins states that his manifested and documented dedication to his family, steady employment history, as well as his cooperation with the investigators, deserve heavy consideration under 18 U.S.C. § 3553(a). See Sentencing Memo. at 6. The Court agrees. The Court does not believe that the punishment that is set forth in the Guidelines is appropriate for Cummins' offense. The Court has considered the kinds of sentences and ranges established by the Guidelines and believes that the statutory minimum sentence, of 120 months, reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public. Given the Congressional statement that Cummins' crime must be punished with a minimum of 120-months incarceration, a sentence of 120 months is sufficient without being greater than is necessary to comply with the purposes set forth in the Sentencing Reform Act. The Court believes that a 120-month sentence more effectively promotes the sentencing goals outlined in 18 U.S.C. § 3553(a) than the Guideline sentence, which is above the statutory minimum. Furthermore, the Court notes that, at the May 19, 2008 hearing, the United States stated that it had no objection to the Court imposing a sentence of 120 months if the Court is so inclined. See Tr. at 5:15-16 (Armijo)("Your Honor, we have no

objection to the 120 months if the Court is so inclined.").

**IT IS ORDERED** that the Defendant's request for a sentence of 87 months in Defendant's Sentencing Memorandum in Accordance with the Plea Agreement is denied. The Defendant's request for a 1-month variance is granted. The Court will sentence Cummins to 120-months incarceration.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gregory J. Fouratt
  United States Attorney
Stephen Gontis
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Mark Chouinard
Albuquerque, New Mexico

    *Attorney for the Defendant*